UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| HELEN SMITH, | : | |
| Plaintiff, | : | |
| vs. | : | 5:07-CV-46 (CAR) |
| WAL-MART STORES EAST, L.P., | : | |
| Defendant. | : | |

*ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT*

Plaintiff Helen Smith ("Mrs. Smith") brings this lawsuit claiming that Defendant Wal-Mart Stores East, L.P. ("Wal-Mart") negligently caused an unattended stock cart to be placed in one of the store aisles, leading her to trip and fall. Before the Court is Defendant Wal-Mart's Motion for Summary Judgment [Doc. 3] wherein Wal-Mart argues that summary judgment is appropriate due to Mrs. Smith's actual knowledge of the hazard. The Court's jurisdiction is proper under 28 U.S.C. § 1332 (diversity), and Georgia law governs the resolution of the claim at issue. See Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938). After carefully considering the parties' briefs, the relevant case law, and all evidence presented, the Court **GRANTS** Wal-Mart's motion [Doc. 3].

## II. FACTUAL BACKGROUND

Viewing the facts in the light most favorable to Mrs. Smith, the nonmoving party, the record shows the following: On June 4, 2004, while shopping at Wal-Mart's

1

Zebulon Road store in Macon, Georgia, Mrs. Smith tripped and fell over an "L-cart"[1] positioned next to the shelves in the aisle where Mrs. Smith was shopping. As a result of the fall, Mrs. Smith sustained injuries and underwent rotary cuff surgery.

On the date of the incident, Mrs. Smith, pushing a regular shopping cart, turned down one of Wal-Mart's aisles in search of a specific product. As she entered the aisle, Mrs. Smith noticed an L-cart positioned on her right next to the shelves. At that time, the L-cart was "manned" by an employee who was re-stocking the shelves with merchandise. In search of the product she wanted, Mrs. Smith walked directly past the L-cart and noticed that it was stacked with boxes that were placed on the middle of the flatbed. (Pl. depo., p. 85-88, 92.) After passing the cart, Mrs. Smith continued down the aisle in search of the product she needed. Eventually, Mrs. Smith determined that the product she needed was, in fact, on the shelves in front of the L-cart she had passed earlier, so she turned around and walked back down the aisle in the direction from which she had originally come.

When Mrs. Smith reached the L-cart for the second time, the cart remained on the same side of the aisle as when she first walked by it. At that point, the cart was "unmanned"[2] and positioned at an angle next to the shelves with one end of the cart pointed more toward the shelves and the other end pointed more toward the middle of

---

[1] L-carts are stock carts with a flat bed raised several inches off the ground by supporting wheels. Attached to one end of the flat bed is a push handle. Thus, the flat bed and attached handle create an "L" shape, from which the cart derives its name.

[2] For reasons unknown to this Court, the employee "manning" this cart was no longer in the aisle.

the aisle.³  To reach the product she wanted, Mrs. Smith was forced to walk around the cart.  As she walked around the cart, she tripped over the far corner and fell to the ground.  Mrs. Smith stated that she "saw the boxes [on the cart] and saw the cart [itself], but something on the wheel or corner tripped [her]." (Pl. depo., p. 88.)  The parties agree that Mrs. Smith tripped over the end of the flatbed protruding from underneath the boxes.  Mrs. Smith stated that she was attentive in watching where she was going but did not realize that the flatbed of the cart extended beyond the boxes.  The aisle was well lit, no obstructions blocked Mrs. Smith's view, she was not distracted, and she had plenty of room to walk around the cart. (Id. at 86, 87, 90, 102, 108.)

One of Wal-Mart's employees observed the trip and fall.  The employee stated that Mrs. Smith tripped over the bottom edge of the flatbed that extended beyond the boxes loaded on top.  (Parham Aff.)  He further stated that because the boxes on top of the flatbed were not stacked up to the edge, it would have been difficult for Mrs. Smith to see the edge of the cart unless she was looking straight down.  (Id.)  The employee explained that he was trained by Wal-Mart to stack boxes up to the edge of the cart so that the bottom of the stock cart would not have protruding edges. (Id.)

At the time of this incident, Wal-Mart maintained Slip, Trip, and Fall Guidelines ("Guidelines") as part of its Risk Control Resource Manual.  The Guidelines were written "to help prevent slips, trips, and falls within a facility," and stated, in part, that employees should "[a]void leaving empty pallets and unmanned pallet jacks, forklifts,

---

³ It is unclear to this Court whether the cart was originally positioned at this angle when Mrs. Smith first passed by it; however, it is undisputed that the cart remained on the same side of the aisle and next to the shelves both times she passed the cart.

or stocking carts on the sales floor except in designated areas or in Receiving." (Rhinehart depo., exhibit 1.) Wal-Mart's representative, the current manager of the Wal-Mart store where the incident occurred, testified that the Guidelines include as a potential tripping hazard an unmanned stocking cart on the sales floor. (Rhinehart depo., p. 30.) The manager also stated that he explains to employees during training that an unmanned stock cart on the sales floor could present a tripping hazard for customers. (Id. at p.33.)

Mrs. Smith originally filed suit in state court alleging that Wal-Mart negligently created a hazard on its premises. Wal-Mart removed the action to this Court and filed the instant motion for summary judgment arguing, under Georgia law, that Mrs. Smith's actual knowledge of the presence of the L-cart bars her claim.

## I. SUMMARY JUDGMENT STANDARD

Summary judgment must be granted if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Johnson v. Clifton, 74 F.3d 1087, 1090 (11th Cir. 1996). Only a genuine issue of material fact will defeat a properly supported motion for summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). This means that summary judgment may be granted if there is insufficient evidence for a reasonable jury to return a verdict for the nonmoving party or, in other words, if reasonable minds could not differ as to the verdict. See id. at 249-52. In reviewing a motion for summary judgment, the court must view the evidence and all justifiable inferences in the light

4

most favorable to the nonmoving party, but the court may not make credibility determinations or weigh the evidence. See id. at 254-55; see also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact" and that entitle it to a judgment as a matter of law. Celotex, 477 U.S. at 323 (internal quotation marks omitted). If the moving party discharges this burden, the burden then shifts to the nonmoving party to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact (i.e., evidence that would support a jury verdict) or that the moving party is not entitled to a judgment as a matter of law. See Fed. R. Civ. P. 56(e); see also Celotex, 477 U.S. at 324-26. This evidence must consist of more than mere conclusory allegations or legal conclusions. See Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991). Ultimately, summary judgment must be entered where "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Celotex, 477 U.S. at 323.

As explained below, the Court finds that Plaintiff has not raised a genuine issue of material fact, and therefore the Court grants summary judgment for Defendants.

### III. ANALYSIS

Mrs. Smith's negligence claim against Wal-Mart is a premises liability claim.

5

Under Georgia law, "[w]here an owner or occupier of land, by express or implied invitation, induces or leads others to come upon his premises for any lawful purpose, he is liable in damages to such persons for injuries caused by his failure to exercise ordinary care in keeping the premises and approaches safe." O.C.G.A. § 51-3-1(West 2007); Robinson v. Kroger Co., 268 Ga. 735, 740, 493 S.E.2d 403, 408 (1997). In order to recover in a premises liability case, a plaintiff must prove (1) that the owner of the premises had actual or constructive knowledge of the hazard; and (2) that the plaintiff lacked knowledge of the hazard despite her exercise of ordinary care due to actions or conditions within the control of the owner or occupier. Robinson, 268 Ga. at 748, 493 S.E.2d at 413. A defendant is entitled to summary judgment when the record shows clearly that the plaintiff had knowledge of the hazard that was equal or superior to that of the defendant or that the plaintiff would have had equal or superior knowledge had the plaintiff used ordinary care for her personal safety. See Gresham v. Bell's Food Market, Inc., 244 Ga. App. 240, 534 S.E.2d 537 (2000); Hindmon v. Virgil's Food Mart, Inc., 252 Ga. App. 732, 556 S.E.2d 135 (2001). Under Georgia law,

> [t]he basis of the proprietor's liability is his superior knowledge, and if his invitee knows of the condition or hazard there is no duty on the part of the proprietor to warn him[,] and there is no liability for [the] resulting injury because the invitee has as much knowledge as the proprietor does and then, by voluntarily acting in view of his knowledge, assumes the risks and dangers incident to the known condition.

Gresham, 244 Ga. App. at 240, 534 S.E.2d at 537 (citation omitted).

Here, summary judgment for Wal-Mart is proper because Mrs. Smith "had actual knowledge of the hazard which caused her fall prior to encountering it." Hindmon, 252 Ga. App. at 733, 137 (citation omitted). Although the parties disagree as to whether the

unattended L-cart over which Mrs. Smith tripped actually constituted a hazard or defective condition,[4] even assuming *arguendo* that the cart did constitute a hazard, Wal-Mart is still entitled to judgment as a matter of law because Mrs. Smith had equal, actual knowledge of the hazard. See Ponder v. Brooks, 256 Ga. App. 596, 569 S.E.2d 267 (2002). Mrs. Smith knew that the cart was in her path prior to her trip and fall and thus, she had as much knowledge of the hazard as Wal-Mart. Mrs. Smith admits that she noticed and observed the cart loaded with boxes both the first and second time she passed the cart. Furthermore, the cart remained in the same position next to the shelves both times she passed the cart. Moreover, Mrs. Smith admits that when she passed the cart the second time there were no obstructions to her view, no one called out or distracted her, and the area where the incident occurred was well lit.

Mrs. Smith argues that she did not have equal, actual knowledge of the hazard because she had no knowledge of the protruding end of the L-cart's flat bed which caused her to fall. Her argument, however, is unavailing. The Georgia Court of Appeals has rejected such arguments in at least two cases. See Gresham v. Bell's Food Market, Inc., 244 Ga. App. 240, 534 S.E.2d 537 (2000); and Pirkle v. Robson Crossing, LLC, 272 Ga. App. 259, 612 S.E.2d 83 (2005).

---

[4] In arguing that the unmanned L-cart is a hazard, Mrs. Smith points to (1) Wal-Mart's trip and fall guidelines instructing employees to avoid leaving unattended stock carts on the sales floor; (2) the Wal-Mart manager's testimony that he trained employees that an unattended stock cart on the sales floor could create a tripping hazard for customers; and (3) the Wal-Mart employee's testimony that he was trained by the manager not to leave an unattended stock cart on the sales floor because of the potential danger to customers. On the other hand, Wal-Mart argues an unattended stock cart is not always a hazard. Because the Court grants summary judgment based on Mrs. Smith's actual knowledge of the cart, the Court need not address the issue of whether the L-cart was actually a hazard.

In Gresham, the plaintiff fell after her foot became entangled on the bottom part of a grocery cart. 244 Ga. App. at 240, 534 S.E.2d at 537. Although the plaintiff admitted that she had seen the cart over which she tripped both upon entering and exiting the store, she argued that because the cart was pushed under a ramp leading to one of the exit doors, her view was partially blocked, and therefore she did not know that the cart was in her path. Id. at 240-41, 534 S.E.2d at 537. The Gresham court rejected the plaintiff's argument that the "blocked portion" of the cart constituted the hazard and affirmed summary judgment for the defendant because "the simple fact is that the plaintiff had actual knowledge of the hazard which caused her to fall prior to encountering it." Id., 534 S.E.2d at 537.

Likewise in Pirkle, the plaintiff, who had fallen over a large curb while walking in the defendant's parking lot, admitted that she had noticed the curb as she approached it, but argued that she did not have actual, equal knowledge of the hazard because she did not know how deep the curb was. 272 Ga. App. at 260, 612 S.E.2d at 83. The court, however, rejected the plaintiff's argument and affirmed summary judgment for the defendant reasoning that the plaintiff "saw the curb in front of her, but simply did not appreciate its height." Id. at 261, 85.

In the case at bar, the simple fact is that Mrs. Smith had actual knowledge of the L-cart which caused her to fall prior to encountering it; she merely did not appreciate its dimensions. Although a plaintiff is not required to "look continuously at the floor for defects," once an invitee observes an object in her path, she is required to use ordinary care to negotiate around it. See Gresham, 244 Ga. App. at 241. Thus, Mrs. Smith's

knowledge of the L-cart precludes her recovery.

## IV.  CONCLUSION

For the foregoing reasons, Wal-Mart's Motion for Summary Judgment [Doc. 3] is **GRANTED**.


**SO ORDERED** this 7th day of August, 2007.


                                                    S/ C. Ashley Royal
                                                  C. ASHLEY ROYAL
                                                  United States District Judge

JRL/SSH